## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

DETRIA CARTER,

      Movant,

v.                                   Case No. 5:20-cv-00103
                                       Case No. 5:17-cr-00113-2

UNITED STATES OF AMERICA,

      Respondent.

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 666). This matter is assigned to the Honorable David A. Faber, Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

### RELEVANT PROCEDURAL HISTORY

**A.**     **Defendant's criminal proceedings and direct appeal.**

On August 22, 2017, Movant, Detria Carter (hereinafter "Defendant") was charged in four counts of an eleven-count superseding indictment. (ECF No. 287). Count One charged Defendant, together with other persons, with conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine, one kilogram of heroin and 280 grams of cocaine base, in violation of 21 U.S.C. § 846. (*Id.* at 1-2). Count Five charged Defendant with knowingly and intentionally possessing with intent to distribute 500 grams or more of a substance containing a detectable amount of cocaine, a Schedule

II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (*Id.* at 6). Count Six charged Defendant with knowingly and intentionally possessing with intent to distribute a quantity of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (*Id.* at 7). Count Seven charged Defendant with using and carrying firearms, that is, a loaded Glock Model 23, .40 caliber semi-automatic pistol and a loaded Ruger 94, .40 caliber semi-automatic pistol, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (*Id.* at 8).

On December 18, 2017, Defendant plead guilty, pursuant to a written plea agreement, to Count Five of the superseding indictment. (ECF Nos. 439, 440). Defendant's plea agreement contained a stipulation of facts concerning her offense conduct. (ECF No. 440 at 9-10). The written plea agreement also contained waiver provisions by which Defendant waived the right to file a direct appeal unless her sentence exceeded the statutory maximum and further waived the right to file any collateral attack of her conviction and sentence other than a claim based upon ineffective assistance of counsel. (*Id.* at 5-6). Both Defendant and her counsel reviewed the plea agreement and verified such review by initialing each page and signing the last page. (*Id.* at 1-8). The plea agreement also contained this statement which Defendant ratified with her signature:

> I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this 7-page agreement that I have read and carefully discussed every part of it with my attorney, and that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

2

(*Id*. at 8).

During the plea hearing, the Court engaged in a thorough plea colloquy with Defendant, who confirmed that she understood the plea agreement, the maximum sentence to which she was exposed under the agreement, and the various constitutional, trial and appellate rights waived by her plea of guilty and the terms of the agreement. (ECF No. 688, Ex. 1, *passim*).  The Court determined that Defendant entered her plea knowingly and voluntarily, and that it was supported by an independent factual basis. (*Id*.)  Defendant indicated that she was satisfied with her counsel's representation.  *(Id*.)

On May 29, 2018, Defendant's counsel, Deirdre H. Purdy ("Purdy") filed a thorough sentencing memorandum addressing Defendant's objections to the Presentence Investigation Report ("PSR"), Defendant's health issues and other mitigating factors, and also filed a separate motion seeking an application of a 1:1 crack to powder cocaine ratio for calculating the drug quantity.  (ECF Nos. 533, 534).  On July 2, 2018, Defendant appeared for sentencing and Purdy zealously argued the issues raised in the sentencing memorandum and motion and advocated for a variant sentence.  (ECF Nos. 541, 549, and 688, Ex. 2).

Based upon a total offense level of 33 and a criminal history category of II, her guideline range of imprisonment was 151-188 months.  (ECF No. 688, Ex. 2 at 10).  The Court denied Defendant's request for a variance and imposed a sentence at the lower end of the guideline range of 151 months of imprisonment, followed by a five-year term of supervised release.  (*Id*. at 16).  Thereafter, Defendant's appeal was dismissed by the United States Court of Appeals for the Fourth Circuit in accordance with the knowing and voluntary appellate waiver contained in his plea agreement.  (ECF No. 688, Ex. 3).

**B.    Defendant's section 2255 motion.**

Defendant's § 2255 motion alleges that Purdy provided ineffective assistance of counsel based upon the following alleged deficiencies:  (1) failing to move to suppress the evidence obtained from the search of the car; (2) failing to provide adequate representation during the pretrial and plea process; (3) failing to object to the gun enhancement at sentencing; and (4) failing to seek Defendant's admission into the Federal Bureau of Prisons' ("BOP") Residential Drug Abuse Program ("RDAP").  (ECF No. 666 at 4).  Additionally, Defendant asserts that she received ineffective assistance of counsel by her appellate attorney, John A. Carr ("Carr").  (*Id.* at 5-8).  Defendant asserts that Carr failed to appeal the sentencing enhancement for the drugs and firearms and further failed to appeal her criminal history calculation.  (*Id.*)

On November 20, 2020, the United States of America ("the government") filed a response to Defendant's § 2255 motion asserting that she had not demonstrated ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  (ECF No. 688).  Included as exhibits with the government's response are her guilty plea hearing transcript (ECF No. 688, Ex. 1); her sentencing hearing transcript (*id.*, Ex. 2); and her appellate dismissal order (*id.*, Ex. 3).

Although Defendant was granted an extension of time until May 14, 2021 to file a reply brief (ECF No. 693), she filed no reply.  The matter is ripe for resolution.

## ANALYSIS

The Supreme Court addressed the right to effective assistance of counsel as guaranteed by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  *Id.*

4

at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  *Id*. at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id*. at 690.  This inquiry is directed at whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "The question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment."  *Id*. at 88.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  *Id*. at 697.  Using this standard, the undersigned will address each of the claims of ineffective assistance of counsel asserted by Defendant.

### A.    Alleged ineffective assistance of counsel by Purdy.

1.    Failure to investigate and file motion to suppress evidence.

Defendant argues that Purdy was ineffective by failing to properly investigate the

5

relevant facts and law and failing to move to suppress the contents recovered in the vehicle search. (ECF No. 666 at 4; ECF No. 667 at 4-5). Her memorandum supporting her petition states:

> As part of its prosecution (although [Defendant's] defense counsel never formally filed for discovery, according to docket records), the government produced evidence, which despite repeated requests, defense counsel never provided to [Defendant], until after she had already pleaded guilty. It was important and necessary for counsel to review all documents, identify possible areas of impeachment for potential prosecution witnesses, and then prepare, file, and argue pre-trial motions that would have quashed and suppressed the results of the illegal search, wrongful amount of drugs. It was also important for defense counsel to establish how [Defendant] could be requested to falsely plead guilty to possessing a quantity of drugs.

(ECF No. 667 at 4-5). Defendant asserts that no large quantity of drugs was found on her person or in an area under her control. (*Id*. at 5). Thus, she suggests that Purdy should have filed a motion to suppress the evidence found in the car and that her failure to do so was not a strategic decision made after adequate research or investigation. Her memorandum further states:

> Defense counsel despite the questionable legal basis for the search of [Defendant] and her car, never did the investigation necessary or filed a motion to suppress the search, saying "it would be her word against theirs." Since [Defendant] had nothing on her person and exerted no custody or control over the drugs in her car, she had a colorable claim to file a motion.

(*Id*. at 7).

The government, however, asserts that "[c]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). (ECF No. 688 at 8). The government further contends that the record clearly demonstrates that Defendant gave valid consent for law enforcement to search her vehicle during the traffic stop and the police seized approximately 996 grams of cocaine, 454

grams of crack cocaine, 59 grams of fentanyl, and two firearms.  (ECF No. 688, Ex. 1 at 22).  The facts of the traffic stop and seizure were confirmed in Defendant's stipulation accompanying her plea agreement.  (ECF No. 440 at 9-10).

During the plea colloquy, neither Defendant, nor her counsel, objected to the government's factual basis regarding the consent provided to search the vehicle.  (ECF No. 688, Ex. 1 at 23).  The government further asserts that "Defendant's guilty plea (Possession with intent to distribute 500 grams or more of cocaine, a schedule II controlled substance) explicitly concedes possession over the drugs found in the car." (ECF 440 at 1-2).  The government further proffered overwhelming evidence that Defendant was involved in her brother's drug trafficking organization.  Thus, the government asserts that Purdy's decision not to file a motion to suppress, and advice concerning Defendant's guilty plea to one possession count, resulting in additional criminal charges being dismissed can be deemed as sound trial strategy.  (ECF No. 688 at 8).  Therefore, the government contends that Defendant's claim of ineffective assistance of counsel concerning Purdy's decision not to move to suppress the search is meritless. (*Id.*) The undersigned agrees.

Defendant has not demonstrated that Purdy's conduct in failing to file a motion to suppress the evidence seized from Defendant's vehicle fell below an objective standard of reasonableness and was anything other than sound trial strategy.  Nor has Defendant demonstrated what, if any, additional investigation should have been done, what it would have demonstrated, or how it would have affected the outcome of her criminal proceedings.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to establish any violation of her Sixth Amendment rights and that she is not entitled to any relief under § 2255 on this claim.

2.    Ineffective assistance during the pre-trial and plea process.

Defendant also asserts that Purdy was ineffective during the pretrial process by advising Defendant to accept the plea agreement. (ECF No. 666 at 4; ECF No. 667 at 6). Her memorandum further asserts that "defense counsels were unanimous in pressuring [Defendant] to plead guilty rather than do the necessary discovery to determine the truth." (ECF No. 667 at 5). She further claims that:

> Counsel's failure to investigate and incorporate the results of [her] investigation into [her] plea negotiations had a direct impact on the plea offered by the government, and constituted prejudice to the [Defendant's] cause. . . . Almost immediately after being charged, [Defendant] was told she would be given additional charges, including a gun possession charge, if she did not immediately accept the government's plea offer. Also the additional crack the amount was off and was not in the indictment. Defense counsel said she could not get little sentence unless [she] agreed to Count 5 then they would drop the gun charge (which was not hers). Also advised her to accept the waiver to challenge her conviction but told her everything would be available to her in the 2255 and also she would be able to file the direct appeal if everything did not work out the way [s]he thinks it would that she would get around 40 to 47 months.

(*Id.* at 6).

In the plea context, counsel renders deficient performance if she provides legally incorrect or unreasonable advice about whether to accept the plea offer. *Lafler v. Cooper*, 566 U.S 156 (2012). Defendant "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A defendant's statement that his or her plea is knowing and voluntary is considered conclusive on the issues. *Savino v. Murray*, 82 F.3d 593, 603 (4th Cir. 1996). Here, as argued by the government:

> Defendant failed to produce any credible evidence that Ms. Purdy's conduct was deficient or affected her decision to plead guilty. There was overwhelming evidence demonstrating Defendant's guilt, as she was under surveillance by the government from on or about August 2016 to June 2017.

(ECF No. 688 at 9, citing *Stipulation*, ECF No. 440 at 9). The government contends that it provided a substantial amount of discovery, which Purdy reviewed with her client, and Purdy also moved for a continuance to permit further review thereof and in anticipation of receiving additional discovery. (ECF No. 357). Although the continuance motion was denied by the Court (ECF No. 362), the record establishes that Purdy demonstrated zealous advocacy during the pretrial process on Defendant's behalf.

As noted in the plea hearing transcript, Defendant stated she had no second thoughts about the wisdom of pleading guilty to this charge. (ECF No. 688, Ex. 1 at 28). Defendant stated on the record that she was pleading guilty to Count Five of the indictment because she was, in fact, guilty and the factual support for her guilt was confirmed by the government's proffer and Defendant's stipulation. (*Id*. at 20-24; ECF No. 440 at 9-10). Purdy also noted that despite a significant amount of time spent going over all matters with Defendant, there was no meritorious legal defense to the charges. (ECF No. 688, Ex. 1 at 28). Moreover, as part of her plea agreement, the government agreed to dismiss the remaining Counts (One, Six and Seven) and did so upon final disposition. (ECF No. 440, Ex. 1 at 2; Ex. 2 at 22-23). Thus, by pleading guilty to Count Five, Defendant avoided possible conviction on the additional counts, reduced her maximum sentence exposure, and further enabled her to receive a three-level reduction in her guideline level by demonstrating her acceptance of responsibility. (ECF No. 688, Ex. 2 at 10). Thus, as the government asserts, entering into the plea agreement and the guilty plea to Count Five constituted sound legal advice by Purdy. (ECF No. 688 at 10).

Moreover, in accordance with *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005), Defendant is bound by her sworn statements made during the plea colloquy, which directly contradict her instant claims. The government argues that, at the

plea hearing:

> [Defendant] testified under oath that she was satisfied with the quality of Ms. Purdy's services as her attorney and was satisfied with Ms. Purdy representing her throughout the sentencing process. [ECF No. 688, Ex. 1 at 26, 28]. Defendant acknowledged that Ms. Purdy had answered all her questions to her satisfaction. [*Id.* at 15]. At no point during the Rule 11 colloquy did she express any dissatisfaction with her representation . . . . Accordingly, the evidence, coupled with [Defendant's] sworn statements, shows that counsel was not deficient by advising [Defendant] to enter into a plea agreement. Therefore, [Defendant's] claim must be dismissed.

(ECF No. 688 at 11).

As clearly established in *Lemaster*, "'in the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false'" and "[r]eaffirmation of such statements at a later sentencing hearing has similar import." 403 F.3d at 221-22. Thus, Defendant's conclusory allegations of an inadequate investigation are insufficient to satisfy either of the *Strickland* prongs to demonstrate ineffective assistance of counsel.

Moreover, Defendant has failed to establish that Purdy's conduct throughout her plea negotiations fell below an objective standard of reasonableness or caused her undue prejudice. First, as noted above, Defendant's guilty plea was supported by the evidence and in her best interest when compared to the additional charges and sentencing exposure she would have faced had she gone to trial. Upon review of Defendant's § 2255 motion documents and the government's response thereto, as well as Defendant's plea agreement, and her plea and sentencing transcripts, the undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to show that her guilty plea was not knowing, voluntary, and intelligent, or that Purdy's conduct in negotiating the plea agreement, and advising Defendant concerning the entry of the same, fell below an

objective standard of reasonableness or resulted in undue prejudice to Defendant. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant has failed to establish any violation of her Sixth Amendment rights and that she is not entitled to any relief under § 2255 on this claim.

### 3. Failure to object to gun enhancement.

Defendant also claims that Purdy was ineffective by failing to object to the firearm enhancement to her sentence under section 2D1.1(b)(1) of the United States Sentencing Guidelines ("USSG"). For this enhancement to apply, the government bears the burden of "'proving possession of a weapon in connection with drug activities' by a preponderance of the evidence." *United States v. Bolton*, 858 F.3d 905, 912 (4th Cir. 2017). Defendant may avoid the enhancement by showing that the "weapons link to his or her drug activities was 'clearly improbable.'" *United States v. Mondragon*, 860 F.3d 227, 231 (4th Cir. 2017). As noted by the government's brief, the fact that the defendant is not charged or convicted of a violation of 18 U.S.C. § 924(c) does not prevent the enhancement under USSG §2D1.1(b)(1). (ECF No. 688 at 12 citing *United States v. Bowman*, 926 F.2d 380, 381-82 (4th Cir. 1991)). The government's undisputed brief further states:

> Whether to apply the dangerous weapon enhancement has generally been left within the broad discretion of the trial court. *Mondragon*, 860 F.3d 231-33. Here, officers seized a duffle bag containing two loaded firearms from the [Defendant] during a traffic stop. ECF 555 ¶ 101. The two loaded handguns were a Glock model 23, .40 caliber semi-automatic pistol and a Ruger model P94, .40 caliber semi-automatic pistol. *Id.* Pursuant to USSG §2D1.1(b)(1), the two level enhancement was correctly applied and no reason to object existed. Notably, while no grounds to object to the gun possession were available, Ms. Purdy did discuss mitigating factors. In her sentencing memorandum to the Court, Ms. Purdy argued that the Court should consider the fact that [Defendant] was unable to use the gun, due to her lack of knowledge and experience, as a mitigating factor. ECF 534, p. 3. It was due to these mitigating factors that the Court sentenced [Defendant] at the bottom of the Sentencing Guidelines range. Exhibit 2, p. 20.

(ECF No. 688 at 12-13). Thus, despite Purdy's attempts to argue for a lower or variant sentence for this reason, there was a factual basis for the gun enhancement and the Court, in its discretion, appropriately applied the enhancement.

At her plea hearing, the District Court confirmed that Defendant understood the maximum statutory penalties to which she would be exposed, and Defendant acknowledged that she and Purdy had discussed the guidelines and Purdy had answered her questions concerning her sentence to her satisfaction, but that she understood that her guideline range could not be determined until the sentencing hearing, after preparation of the PSR. (ECF No. 688 at 13 and Ex. 1 at 13-14). Additionally, the Court ascertained that Defendant understood the Court's discretion in departing from the guideline range or issuing a variant sentence. (*Id.*) As further specifically noted in the plea transcript:

> THE COURT: Do you understand that if you're not satisfied with the type of sentence I impose upon you at that time, that will not give you any basis to withdraw your plea of guilty and claim a right to stand trial?
>
> THE DEFENDANT: Yes

(ECF No. 688, Ex. 1 at 26).

Defendant has not demonstrated that Purdy's conduct with respect to the calculation of her guideline and ultimate sentence fell below an objective standard of reasonableness or that she was unduly prejudiced by Purdy's actions. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to establish any violation of her Sixth Amendment rights and that she is not entitled to any relief under § 2255 on this claim.

4. Failure to seek Defendant's admission into RDAP.

Defendant's § 2255 motion also appears to assert that Purdy provided ineffective

assistance of counsel because she failed to seek Defendant's placement or admission into

the BOP's RDAP program. Her memorandum states:

> The RDAP program is one of the few sentence-relief programs available to
> individuals like [Defendant] who suffered from drug and alcohol abuse, and
> with brother and father all around drug users or drug environment,
> combining much-needed education and rehabilitation with possibility of a
> reduced sentence (if the participant successfully completes the program).
> Defense counsel should have been aware of this long-running and well-
> known program and suggested ways for [Defendant] to, not only receive the
> treatment that [s]he clearly needed, but also to receive sentence relief.

(ECF No. 667 at 3).

The government asserts that this claim is clearly refuted by the record. Its brief

states:

> In [Defendant's] sentencing memorandum, Ms. Purdy recognized
> [Defendant's] ailments and recommended [Defendant] be confined to a
> Federal Medical Facility. ECF 534, p. 11. At sentencing, Ms. Purdy
> advocated for [Defendant] to be housed at FPC Alderson and be permitted
> to self-report so she could continue her medical treatments. Exhibit 2, p.
> 14. Accordingly, the Court recommended [Defendant] serve her sentence
> in FPC Alderson to allow her to receive medical treatment <u>and drug</u>
> <u>counseling treatment</u>. Exhibit 2, pp. 17, 22. While the recommendation for
> drug treatment made by the Judge at sentencing is strongly considered, the
> BOP has final decision-making authority for an inmate's acceptance into the
> drug treatment program. Thus, because Ms. Purdy exhausted her means to
> argue for [Defendant's] acceptance into the program, she cannot be faulted
> for [Defendant's] lack of progression into RDAP.

(ECF No. 688 at 14-15) (emphasis added).

Even if Purdy did not make this specific request at sentencing, the undisputed

record demonstrates that the Court recommended that Defendant be designated to a

facility where her medical conditions could be treated, but also recommended that she be

placed where she could complete the RDAP program as well. At the end of the day,

however, the Court cannot require the BOP to offer an inmate entry into RDAP and, of course, completion thereof is a prerequisite to any related sentence reduction.  Therefore, Defendant cannot demonstrate ineffective assistance of counsel by Purdy in this instance either.

For all these reasons, Defendant has not established either that Purdy's conduct fell below an objective standard of reasonableness, or that she was unduly prejudiced thereby.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not established a violation of her Sixth Amendment rights due to Purdy's conduct in relation to her pre-trial proceedings, guilty plea, or sentencing proceedings.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is not entitled to any relief on Ground One of her § 2255 motion.

### B.    Alleged ineffective assistance of counsel on appeal by Carr.

In Grounds Two, Three, and Four of her § 2255 motion, Defendant alleges various acts by her appellate counsel, Mr. Carr, which she asserts amounted to ineffective assistance of counsel.  In particular, Defendant asserts that Carr failed to appeal the sentencing enhancements for drug quantity and firearms and further failed to appeal her criminal history calculation.[1]

At the outset, as argued in the government's brief herein (ECF No. 688 at 17-18), the undersigned notes that each of these claims appears to fall within the appellate waiver

---

[1] From the undersigned's review of the appellate docket sheet, it appears that the government moved to dismiss Defendant's appeal based upon the appellate waiver provision in her plea agreement.  Carr subsequently filed a opening brief asserting that the district court's failure to vary from the guideline sentence was unreasonable and Defendant's sentence was greater than necessary to comply with the purposes of the § 3553(a) factors. *United States v. Carter*, No. 18-4475, Doc. 53 (4th Cir. Mar. 28, 2019). The Court thereafter dismissed the appeal on June 6, 2019.  (*Id.*, Doc. 65, 66).

contained in Defendant's plea agreement, which the Fourth Circuit ultimately found was knowing and voluntary and applicable to any claims challenging her conviction or sentence that could have been raised by Carr in Defendant's appeal. The appellate waiver provision states:

> **WAIVER OF APPEAL AND COLLATERAL ATTACK.** <u>Ms. Carter knowingly and voluntarily waives the right to seek appellate review of her conviction and of any sentence of imprisonment, fine or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment, fine or term of supervised release is below or within the Sentencing Guideline range corresponding to offense level 34.</u> The United States also waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is within or above the Sentencing Guideline range corresponding to offense level 31. Ms. Carter also knowingly and voluntarily waives the right to challenge her guilty plea and her conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(ECF No. 440 at 5) (emphasis added). Defendant's sentencing guideline level was 33, below offense level 34, so the waiver of any claims related to her conviction or sentence is valid. There is no reason to believe that these claims which Defendant asserts Carr should have raised also would not have been barred as they each concern the determination of her sentence, which is clearly governed by the waiver provision. Nonetheless, the undersigned will touch briefly on each claim.

      1.     Failure to challenge drug quantity on appeal.

In determining the drug quantity for her guideline calculation at sentencing, Defendant was attributed 39 oz. of crack cocaine as offense and relevant conduct. She asserts that this quantity was not part of Count Five of the indictment to which she had

pled guilty and, thus, was an allegedly improper enhancement of her sentence. (ECF No. 667 at 7). Her memorandum further asserts:

> The appellate counsel erred in failing to raise this issue on appeal. This argument was superior to the arguments raised on appeal and, if appellate counsel had raised this issue, a reasonable probability existed that the Fourth Circuit would have granted relief, leading to a new sentencing hearing.

(*Id.*) Defendant further asserts that it was improper to enhance her sentence for 39 oz. of crack cocaine while another co-defendant was only enhanced for 18 oz. on the same transaction. (*Id.*) Defendant further asserts that this enhancement violated the Supreme Court's ruling in *Alleyne v. United States*, 570 U.S. 99 (2013), because the enhancement was not presented to and found beyond a reasonable doubt by a jury or admitted by Defendant.[2] (*Id.*)

> The government addressed this claim as follows:

> The record demonstrates that this issue was thoroughly litigated through written motion and sentencing memoranda. Counsel at the trial level moved the Court to use a 1:1 crack to cocaine powder ratio to calculate relevant conduct at sentencing. ECF 533. Trial counsel further objected to the cocaine enhancement in [Defendant's] sentencing memorandum to the Court and again at the sentencing hearing. ECF 534. During the sentencing hearing, the Court noted that the United States Code and the United States Sentencing Guidelines set forth that crack to cocaine calculations must be quantified using the 18:1 ratio. Exhibit 2, pp. 8-9. The Court correctly applied the current ratio as written, noting any changes to the law need be made by Congress and the Sentencing Commission, not the Court. Id. With no changes implemented by Congress, Mr. Carr did not err in not appealing this issue . . . Lastly, [Defendant's] claim that counsel was ineffective by failing to object to the sentencing disparity between her and one or more codefendants need not be considered. The evidence attributing the drugs to [Defendant] did not present any inaccuracies. Moreover, it is well established that an otherwise proper sentence may not be challenged on the basis of disparity between sentences of codefendants. *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996).

---

[2] In *Alleyne*, the Supreme Court held that any fact that increases a mandatory minimum sentence for a crime is an "element" of the crime, not a "sentencing factor," and must be submitted to jury to be found beyond a reasonable doubt or admitted by the defendant.

(ECF No. 688 at 18-19).

Defendant's sentencing enhancements did not increase a mandatory minimum or exceed a statutory maximum.  Thus, *Alleyne* was not violated by this relevant conduct drug quantity enhancement.  Moreover, the *Alleyne* Court specifically stated "Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.  570 U.S. 99 (2013).  The enhancements challenged by Defendant here fall into this latter category.  Therefore, there is no reasonable probability that Defendant would have succeeded with these challenges on appeal and, thus, Defendant cannot demonstrate that Carr was ineffective in failing to assert this claim in her direct appeal.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to establish any violation of her Sixth Amendment rights and that she is not entitled to any relief under § 2255 on this claim.

2.     Failure to challenge gun enhancement on appeal.

Defendant makes a similar challenge concerning the gun enhancement under USSG § 2D1.1(b)(1) and Carr's failure to challenge the same on appeal.  Defendant claims that she did not "use the gun in furtherance of a drug offense" and she claims that the government failed to prove it by a preponderance of the evidence.  (ECF No. 667 at 8). She also claims that this enhancement was improper because she did not plead guilty to the charge in Count Seven of her indictment charging her with using or carrying a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).  (*Id.*)

Defendant further claims that, had Carr raised this issue on appeal, it would have

been favorably reviewed by the Fourth Circuit. (*Id.*) Defendant further appears to assert that the enhancement should be removed and she be resentenced based upon the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), which voided the "residual clause" contained in 18 U.S.C. § 924(c)(3)(A). However, even if these claims were properly before this Court, because Defendant was not convicted of a § 924(c) offense, *Davis* and Defendant's arguments concerning insufficient evidence demonstrating that she "used or carried a firearm in furtherance of a drug trafficking crime" have no application herein. Rather, the enhancement in USSG § 2D1.1(b)(1) is appropriate when a "dangerous weapon" was merely "possessed" during the offense. Therefore, the enhancement was appropriate in Defendant's case.

With respect to this issue, the government's response contends:

> [T]here were no grounds on which Mr. Carr could appeal the gun enhancement. Officers seized two loaded firearms from [Defendant's] possession. ECF 555, ¶ 101. The fact that the defendant was never convicted under § 924(c) does not prevent the enhancement under USSG §2D1.1(b)(1). *Bowman*, 926 F.2d 380, 381-82 (4th Cir. 1991). Therefore, pursuant to USSG §2D1.1(b)(1), the two-level enhancement was correctly applied at the Court's discretion. Because there was no good-faith argument to be made on [Defendant's] behalf, Mr. Carr's decision not to appeal that issue was objectively reasonable. Additionally, the United States filed a motion to dismiss the appeal in the Fourth Circuit Court of Appeals, based upon the appeal waiver language contained within [Defendant's] plea agreement. That motion was granted, and the appeal was dismissed. Exhibit 3. Thus, [Defendant] is unable to establish that Mr. Carr's representation was outside the range of professionally competent assistance.

(ECF No. 688 at 17-18). The undersigned agrees. There is no reasonable probability that Defendant would have succeeded with this challenge on appeal and, thus, Defendant cannot demonstrate that Carr was ineffective in failing to assert this claim in his direct appeal. Accordingly, the undersigned proposes that the presiding District Judge **FIND**

that Defendant has failed to establish any violation of her Sixth Amendment rights and that she is not entitled to any relief under § 2255 on this claim.

      3.      Failure to challenge criminal history calculation on appeal.

Defendant's final claim asserts that Carr provided ineffective assistance of counsel because he failed to raise a claim challenging the calculation of her criminal history category used at her sentencing. Specifically, Defendant asserts that the Court applied a misdemeanor as a felony when calculating her criminal history category and that she "receive[d] more time than the actual calculation." (ECF No. 667 at 8). Beyond this statement, however, Defendant provides no additional facts or explanation about this claim.

The government addressed this claim as follows:

> Defendant has not presented any evidence setting forth why that calculation was improper other than making a blanket assertion that a misdemeanor conviction was counted as a felony conviction. Defendant never made any objection to the criminal history calculation and has therefore waived her right to argue that calculation on appeal or in a habeas corpus action. Failure to object to sentencing errors in the district court constitutes waiver of the right to appeal those issues, in the absence of plain error. *United States v. Walker*, 112 F.3d 163, 166 (4th Cir. 1997).

>                                     * * *

> In the case at bar, defendant cannot establish actual prejudice as she has not established that a mistake was made. To the contrary, the PSR is clear that defendant was assigned only two criminal history points from two prior misdemeanor convictions, placing her in a criminal history category of II.

(ECF No. 688 at 19-20). There is no reasonable probability that Defendant would have succeeded with this challenge on appeal and, thus, she cannot demonstrate that Carr was ineffective in failing to assert this claim in her direct appeal. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to establish

any violation of her Sixth Amendment rights and that she is not entitled to any relief under § 2255 on this claim.

In sum, Defendant has not demonstrated that Carr's conduct fell below an objective standard of reasonableness or that she suffered undue prejudice as a result thereof. Consequently, Defendant has not established any violation of her Sixth Amendment rights and she is not entitled to any relief on Grounds Two, Three, and Four of her § 2255 motion.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 666) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Faber.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Defendant and to transmit a copy to counsel of record.

February 17, 2023

Dwane L. Tinsley
United States Magistrate Judge